**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DERRICK V. STATEN,<br><br>*Plaintiff,*<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,[1]<br><br>*Defendant.* | CIVIL ACTION<br>NO. 24-2655 |

**Pappert, J.** **September 17, 2026**

# MEMORANDUM

Derrick Staten seeks review of the Commissioner of Social Security Administration's denial of his request for disability insurance benefits and supplemental security income under the Social Security Act. (Compl., Dkt. No. 1, ¶¶ 1, 6, 11.) An Administrative Law Judge found Staten not entitled to benefits, and the Appeals Council denied Staten's request for review. (*Id.*, ¶¶ 8–10.) Staten timely filed his request for judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). (*See* Compl., ¶ 1.) The case was referred to Magistrate Judge Scott W. Reid, who issued a Report and Recommendation that Staten's request for review be denied and judgment entered in favor of the Commissioner. (Dkt. Nos. 16–17.)

Upon careful consideration of Staten's Brief and Statement of Issues in Support of Request for Review (Dkt. No. 11), the Commissioner's Response (Dkt. No. 14), Staten's Reply (Dkt. No. 15), Judge Reid's R. & R. (Dkt. No. 17), Staten's Objections (Dkt. No. 18), the Commissioner's Response (Dkt. No. 19) and the administrative record

[1] Frank J. Bisignano is the current Commissioner of the United States Social Security Administration.

(Dkt. No. 8), the Court overrules Staten's objections, denies his request for review and affirms the Commissioner's decision.

I

Staten applied for disability insurance benefits and supplemental social security income on November 29, 2021. (Administrative Record ("R.") at 250, 254.) His applications alleged his disability began on April 1, 2020. (*Id.*) Staten seeks DIB and SSI due to a number of impairments, including a history of heart attacks and strokes, left-sided weakness, difficulty moving, bipolar disorder, depression and high blood pressure. (*Id.* at 286.)

Staten's application was denied on March 15, 2022, (*id.* at 149 & 154), and again denied upon reconsideration on August 5, 2022, (*id.* at 161 & 166). He subsequently filed a request for a hearing by an ALJ, (*id.* at 168), which was held on May 3, 2023, (*id.* at 46). After considering the evidence and applying the five-step sequential evaluation process,[2] the ALJ determined on August 25, 2023, that Staten was not "disabled." (*Id.* at 21–37.)

[2] The Commissioner has established a five-step process to determine whether claimants are disabled. 20 C.F.R. § 416.920(a). At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity." *Ramirez v. Barnhart*, 372 F.3d 546, 550 (3d Cir. 2004) (citation omitted); 20 C.F.R. § 416.920(b). If not, the ALJ proceeds to step two where they must determine whether the claimant has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities." *Ramirez*, 372 F.3d at 550 (citation omitted); 20 C.F.R. § 416.920(c). If the claimant successfully demonstrates a "severe impairment," the ALJ proceeds to step three to assess whether the impairment meets or medically equals one of the listed impairments; if so, the claimant qualifies for disability. *Ramirez*, 372 F.3d at 550–51 (citation omitted); 20 C.F.R. § 416.920(d). If, however, the impairment does not meet or medically equal a listed impairment, the inquiry proceeds to step four where the ALJ determines whether the claimant has the "residual functional capacity" (RFC) to perform any prior relevant work. *Ramirez*, 372 F.3d at 551; 20 C.F.R. § 416.920(e). If the claimant can perform any prior relevant work, they will not be found disabled. *Ramirez*, 372 F.3d at 551. If not, the fifth step requires the ALJ to consider "vocational factors" (age, education and past work experience) to determine whether the claimant is capable of performing other jobs existing in the national economy. *Id.* (citing 20 C.F.R. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c)).

At step one, the ALJ concluded that Staten has not engaged in substantial gainful activity since the onset of his alleged disability. (*Id.* at 24.) At step two, the ALJ found that Staten suffers from a number of severe impairments, including coronary artery disease, status-post cerebrovascular accident, hypertension, lumbar degenerative disc disease with L4 and L5 radiculopathies, cervical degenerative disc disease, obesity, polysubstance abuse, bipolar disorder, post-traumatic stress disorder, depressive disorder and anxiety disorder. (*Id.*)

At step three, the ALJ determined that Staten's impairments did not meet or medically equal the severity of one of the listed impairments, specifically Listing 1.15 Disorders of the Skeletal Spine Resulting in Compromise of a Nerve Root(s), Listing 4.02 Chronic Heart Failure or Listing 4.04 Ischemic Heart Disease. (*Id.* at 24–25.) The ALJ also considered Staten's obesity. (*Id.* at 25.)

At step four, the ALJ found that Staten has the residual functional capacity to perform "light work" with limitations and that Staten is "limited to occasional climbing of ramps and stairs, balance, stoop, kneel, and crouch," but noted that Staten is unable to crawl or climb ladders, ropes or scaffolds. (*Id.* at 27.) The ALJ determined that Staten can perform all reaching frequently, except any overhead reaching. (*Id.*) The ALJ further found that Staten can have "no concentrated exposure to extreme cold, vibration, and hazards" but can "understand, remember, and carry out simple instructions." (*Id.* at 27–28). The ALJ concluded Staten can have "occasional interactions with supervisors, coworkers and the public" and can "tolerate occasional changes in a routine work setting." (*Id.* at 28.) Finally, the ALJ determined that Staten cannot "work on mandated teams," should not have direct customer service-

related jobs and cannot perform assembly line work or strict hourly quota-based work. (*Id.*) Given his RFC, the ALJ concluded that Staten is unable to perform his past relevant work as a collections clerk or hoist operator. (*Id.* at 35.)

At step five, however, the ALJ found that Staten's RFC permits him to work jobs that exist in significant numbers in the national economy, for example, as an office helper, price marker or mail clerk. (*Id.* at 36.) Thus, the ALJ found that Staten was not disabled within the meaning of the statute and not entitled to benefits. (*Id.* at 37.)

The ALJ's decision became final after the Appeals Council denied Staten's request for review on April 22, 2024. (*Id.* at 1–6.)

II

When a party makes a timely and specific objection to a portion of a magistrate judge's report and recommendation, the District Court must engage in *de novo* review of the issues raised. 28 U.S.C. § 636(b)(1). *See also Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011). In doing so, the court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The court may also, in the exercise of sound judicial discretion, rely on the magistrate judge's proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676 (1980).

The District Court's review of an ALJ's findings of fact is limited to determining whether they were "supported by substantial evidence." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)); *see also Zirnak v. Colvin*, 777 F.3d 607, 610 (2014) (noting that the reviewing court "must affirm the ALJ so long as his conclusions are supported by substantial evidence" (citing *Craigie v.*

*Bowen*, 835 F.2d 56, 57 (3d Cir. 1987))). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir.2005). "'Substantial evidence' is not a high standard." *Blackman v. Kijakazi*, 615. F. Supp. 3d 308, 314 (E.D. Pa. 2022) (citing *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)).

In reviewing the ALJ's decision, the Court is not permitted to reweigh the evidence or substitute its own conclusions for those reached by the ALJ. *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) (citation omitted). The court must "defer to the ALJ's evaluation of evidence, assessment of the witnesses, and reconciliation of conflicting expert opinions." *Blackman*, 615 F. Supp. 3d at 315 (citing *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 506 (3d Cir. 2009)); *see also D'angelo v. Colvin*, No. 14-6594, 2016 WL 930690, at *2 (E.D. Pa. Mar. 11, 2016) ("The ALJ resolves conflicts in the evidence, determines the evidence's credibility, and assigns the appropriate weight to be given such evidence." (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999); *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 2004))). "If the ALJ's decision is supported by substantial evidence, the Court may not set it aside even if the Court would have decided the factual inquiry differently." *Santiago v. Barnhart*, 367 F. Supp. 2d 728, 732 (E.D. Pa. 2005) (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)).

III

In his Objections, Staten argues that the ALJ: (1) had insufficient evidence to discredit portions of Chiropractor James Robinson's report on Staten's limitations; (2) improperly determined that Nurse Practitioner Preksha Patel's examination

findings did not support some of her conclusions, such as lifting and carrying limitations; (3) erred in failing to include Staten's use of a cane in her assessment and (4) had insufficient evidence to find that Staten's own testimony about his limitations was inconsistent with other parts of the record.[3] (Obj. at 1–3.) Judge Reid found the ALJ's conclusions properly supported on each of these issues. (R. & R. at 15.) As Staten's objections to the R. & R. are timely and specific, Judge Reid's recommendations are reviewed *de novo*.

A

First, Staten takes issue with the ALJ's decision to reject Dr. Robinson's prescribed pushing/pulling, reaching, attention and concentration limitations, as well as Dr. Robinson's opinion that Staten would need unscheduled breaks and absences due to his impairments or treatments. (*See* R. 33–34; Obj. at 2.) The ALJ found that Dr. Robinson "does not provide support for such extreme limitations" and that they are not consistent with other evidence in the record. (R. at 34.) Staten argued in his initial Brief and Statement of Issues ("Initial Brief," Dkt. No. 11) that these findings were improper in part because the ALJ "did not cite to any specific evidence undermining the limitations he chose to reject." (*Id.* at 6.) Judge Reid, on the other hand, found that "the ALJ identified and discussed in considerable detail" the specific evidence the ALJ viewed as conflicting with Dr. Robinson's conclusions. (R. & R. at 4–6.) In his

---

[3] Both in his Initial Brief and his Objections, Staten contends that "the ALJ is not qualified to review the medical evidence and determine what findings are supportive of a medical opinion." (Obj. at 2; Initial Brief at 8.) Judge Reid found the argument "specious," noting that the ALJ is "required" to "determine whether [a medical source's] opinion was well-supported." (R. & R. at 7 (citing 20 C.F.R. §§ 404.1520c(b), 416.920c(b)).) *See Chandler*, 667 F.3d at 361 ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." (citing 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c))); *Christopher Lee T. v. O'Malley*, No. 23-CV-302, 2024 WL 3522184, at *6 (E.D. Pa. July 24, 2024) ("It is the ALJ's exclusive responsibility to determine the claimant's RFC." (citing 20 C.F.R. § 404.1546(c))).

Objections, Staten renews his contention that the ALJ failed to identify the conflicting evidence with specificity. (Obj. at 1.) He also argues that the ALJ ignored the fact that Dr. Robinson supported his opinion in part with reference to an MRI showing spinal abnormalities and clinical findings including reduced range of motion. (*Id.* at 2.)

The ALJ's decision need only discuss the most relevant evidence concerning a claimant's disability, "but it must provide sufficient discussion to allow the reviewing Court to determine whether its rejection of potentially significant evidence was proper." *D'angelo*, 2016 WL 930690 at *1 (citing *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 203–04 (3d Cir. 2008)). The ALJ did so here.

The ALJ's conclusion that some of Dr. Robinson's findings were unpersuasive was supported by substantial evidence in the record that conflicted with the chiropractor's pushing/pulling, reaching, attention, stamina, and attendance assertions. The ALJ's decision accounted for medical evidence of record, multiple medical opinions and prior administrative medical findings, including those from State agency medical and psychological consultants at both the initial and reconsideration levels; consultative medical examiners Christine Fahr, N.P. and Preksha Patel, N.P.; Staten's chiropractor, James Robinson, D.C.; consultative psychological examiners Anne Rene Miller, Ph.D. and Martha Diprinzo, M.A; and Staten's pain management provider, Anthony DeEugenio, D.C. (R. 29–35.) The ALJ explained which parts of the findings were persuasive and which were not. (*Id.*)

B

Second, Staten objects to the ALJ's determination that Nurse Practitioner Preksha Patel's examination findings did not support some of her conclusions. Patel

opined that Staten could lift/carry up to 10 pounds occasionally. (R. at 2647.) The ALJ concluded that Patel's "lifting and carrying limitations are not supported by Ms. Patel's own examination findings of no acute distress, slightly antalgic but stable gait, ability to walk on heels and toes with[] difficulty,[4] no sensory deficit, and 5/5 strength in the upper and lower extremities" and was not consistent with other evidence in the record, including "the normal physical examination findings and opinions of Ms. Fahr and the State agency medical consultants." (*Id.* at 33, 2644–45.) Staten argued in his Initial Brief that the ALJ failed to properly evaluate Patel's opinion because it "was supported by a history of a myocardial infarction, stroke, and cardiovascular events." (Initial Brief at 8.) Like the ALJ, Judge Reid determined that "Patel did not provide an explanation linking the items she named to any result which would cause limitations, such as paralysis or reduced heart functioning." (R. & R. at 8.) In his Objection, Staten renews his claim that Patel supported her opinions, relying on "treatment history." (Obj. at 2.)

Substantial evidence supports the ALJ's conclusion that Patel's lifting and carrying limitations were not persuasive. In addition to concluding that the limitations contradicted Patel's own findings, the record contains numerous medical opinions inconsistent with Patel's lifting/carrying limitations. According to Nurse Practitioner Fahr's February 2022 report, Staten could lift up to 10 pounds frequently and between 11 to 20 pounds occasionally and could carry up to 20 pounds occasionally. (R. at 1620.) The record also includes determinations that Staten could lift up to 10 pounds frequently and between 11 to 20 pounds occasionally. (*See, e.g.*, *id.* at 81, 84–

[4] Judge Reid correctly noted that N.P. Patel's examination stated that Staten could walk on heels and toes "with" difficulty. (R. at 2644.)

85, 95, 98–99, 115–16, 134–35.) The record indicates Staten possessed "normal strength" or "5/5 B/L upper and lower strength." (*See, e.g.*, *id.* at 2811, 2814, 2818, 2824, 2827, 2870, 2889, 2903, 2910, 2939.) Accordingly, the ALJ's findings were supported by substantial evidence. *See Brown*, 649 F.3d at 196 (noting that an "ALJ is not bound to accept the opinion or theory of any medical expert, but may weigh the medical evidence and draw its own inferences." (quoting *Kertesz v. Crescent Hills Coal Co.*, 788 F.2d 158, 163 (3d Cir. 1986))).

C

Third, Staten argues that the ALJ erred by failing to include Staten's use of a cane in her assessment. Staten contends the ALJ did not consider whether Staten's case use was medically necessary, nor consider it in her RFC assessment. (Initial Brief at 9.) Judge Reid correctly noted that the ALJ must only consider "medically required" hand-held devices under Social Security Ruling 96-9p. (R. & R. at 8.) He concluded that, while there was an argument that the ALJ should have discussed whether Staten's cane usage was a factor in her RFC assessment, the failure to do so was ultimately harmless error because "there is no documentation at the level required by SSR 96-9p." (*Id.* at 9.) Staten believes the error is "not harmless, as the evidence shows frequent cane usage." (Obj. at 3.)

To find a hand-held assistive device "medically required" under Social Security Ruling 96-9p, "there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed." *Brooks v. Saul*, No. CV 19-2855, 2019 WL 7048794, at *6 (E.D. Pa. Dec. 23, 2019) (citing SSR 96-9p). "[A]n ALJ may discount a claimant's use of a cane

when there is insufficient supporting evidence of a cane in the record." *Morales v. Kijakazi*, No. 20-5258, 2022 WL 2916683, at *9 (E.D. Pa. 2022) (citation omitted).

Staten argues that the record "shows frequent cane usage," (Obj. at 3), but the record also shows that that on many occasions, Staten both used and did not use a cane, indicating the device was not a medical necessity. Staten points to treatment notes from December of 2022 that stated Staten "would like a prescription for a cane or a walker as he is having difficulty getting around the house." (R. at 2829.) He also cites a January, 2023 primary care office note stating he reported falling down the stairs after misplacing his cane, (*id.* at 2832 & 2955), as well as a physical therapy note from April of 2023, that stated Staten ambulated with a quad cane, (*id.* at 3661). Additionally, the record showed that Staten testified that he has used a cane since December of 2022, as noted by the ALJ, (*id.* at 28, 56, 65), and that he selected "I can only walk using a cane or crutches" on an Oswestry Cervical Pain Questionnaire from June of 2022, (*id.* at 2561 & 2564). Staten also marked that he did use a cane in a Function Report; however, he noted that the cane had not been prescribed by a doctor. (*Id.* at 310.)

On the other hand, the record also shows that at numerous points in time, Staten was not using a cane. In another Function Report, Staten did not say he used a cane and had written "N/A" when prompted to select which physical aids he uses. (*Id.* at 328.) Both Fahr and Patel marked "No" when asked if Staten required the use of a cane to ambulate and that Staten can ambulate without using a wheelchair, walker, or 2 canes or 2 crutches. (*Id.* at 1621, 1625, 2648, 2652.) Fahr's notes also show that "[n]o devices were used" regarding Staten's general appearance, gait and station. (*Id.* at

1617.) Furthermore, "Cane" was unselected on a December, 2020 Home Health Certification and Plan of Care signed by Mara Leyzin, MD. (*Id.* at 1508.) On medical history forms, Staten did not mark "Cane" when prompted to select all assistive devices he uses, (*id.* at 1628, 1640, 2634), and emergency department records left "Walking Cane" unselected, (*id.* at 2559.) On another Oswestry Cervical Pain Questionnaire from October and December of 2022, Staten left "I can only walk using a cane or crutches" unselected. (*Id.* at 2692–93, 2719–20.) Progress notes and pain management & MRI E/M forms from October and December of 2022, also left "Walking Cane" unselected. (*Id.* at 2694, 2696, 2717, 2721.) Additionally, a primary care office note from February of 2023, stated that Staten's mobility and gait was normal with no assistive devices. (*Id.* at 2811.) There is no indication in the record that Staten ever received a prescription for a cane.

In *Howze v. Barnhart*, the appellant testified that a doctor provided him with a cane after left-leg weakness caused him to lose his balance and fall. 53 F. App'x 218, 222 (3d Cir. 2002). The Third Circuit Court of Appeals noted that the record included a reference to a "script" for a cane and a doctor's report marking "hand-held assistive device medically required for ambulation." *Id.* As here, "there [were] multiple references to the fact that appellant uses a cane but no discussion of its medical necessity." *Id.* The appeals court concluded the appellant had insufficient evidence to establish his use of a cane was a medical necessity. *Id.* *See also Blackman*, 615 F. Supp. 3d at 331–32 (finding that the ALJ's failure to include the use of a cane in the RFC assessment did not provide an adequate basis for remand on its own where "[t]here is no indication in the record that Plaintiff's use of a cane was prescribed by a

doctor, only that she began using one to avoid falling"); *Brooks*, 2019 WL 7048794, at 6 ("I conclude the ALJ did not err. Plaintiff argues that 'treatment notes support [Plaintiff's] need for a cane,' citing various treatment notes. However, the relied-upon treatment notes merely reflect that Plaintiff presented with a cane, and do not establish that the cane was medically necessary." (internal citations omitted)).

The R. & R. concluded, correctly, that there was a "plausible argument the ALJ should have discussed" Staten's cane use in her RFC assessment but that remand is not required because there is insufficient evidence to establish his use of a cane was a medical necessity. *See Rutherford*, 399 F.3d at 552–53 (concluding that a remand was not appropriate "because it would not affect the outcome of the case . . . particularly when the administrative record indicates clearly that the ALJ relied on the voluminous medical evidence as a basis for his findings regarding her limitations and impairments").

D

Finally, Staten asserts that the ALJ failed to perform a proper analysis of his disabling symptoms in finding that his testimony was inconsistent with other parts of the record. The ALJ found that Staten's "statements concerning the intensity, persistence and limiting effects of [his] symptoms" are inconsistent with the "objective medical evidence, [his] treatment history, his continued activities of daily living, and the [medical opinion evidence." (R. at 29.) In his Initial Brief, Staten argued the ALJ failed to explain why she concluded that Staten's impairments were not as limiting as he testified. (Initial Brief at 10.) Staten renews is contention in his Objections, arguing that the ALJ "cherry-picks through the record." (Obj. at 3.)

Substantial evidence supports the ALJ's conclusion that Staten's complaints about the "intensity, persistence, and limiting effects of his symptoms" were inconsistent with evidence in the record. "An ALJ may reject a claimant's subjective testimony if he does not find it credible so long as he explains why he is rejecting the testimony." *Snedeker v. Comm'r of Soc. Sec.*, 244 F. App'x 470, 474 (3d Cir. 2007) (citing *Schaudeck*, 181 F.3d at 433).

The ALJ ultimately determined that, contrary to Staten's claim, he was not disabled. In support of that conclusion, as Judge Reid noted, the ALJ cited medical evidence, including Staten's treatment history, records of Staten's hospital admissions, emergency department records and consultative physical and mental examinations. (R. at 29–30.)

In further support of the conclusion, the ALJ noted Staten's daily activities, including his ability to attend physical therapy three times per week and perform household chores, such as preparing his own meals, washing dishes, doing laundry and cleaning his bathroom. (*Id.* at 31). The ALJ also noted Staten is able to use public transportation and operate a motor vehicle and shops with his son, reads, writes, listens to the radio and talks and texts with others. (*Id.*) In relation to his daily activities, the ALJ "acknowledges that the claimant has some limitations performing these activities" but concluded that "taken together and considered in conjunction with the . . . medical evidence of record, they suggest that the [Staten] can perform work" within the ALJ's stated parameters. (*Id.*) The ALJ's findings as to Staten's limitations are thus supported by substantial evidence. *See Irelan v. Barnhart*, 82 F. App'x 66, 73 (3d Cir. 2003) (finding substantial evidence supported the Commissioner's conclusion

that plaintiff's testimony exceeded objective evidence and was inconsistent with daily activities, including shopping, the ability to drive a car, visiting her daughter an average of three times a week and an annual trip to Florida); *Snedeker*, 244 F. App'x at 474 (finding plaintiff's "complaints of disabling symptoms are undermined by his not taking prescribed medication and infrequently seeking medical treatment. Credence for his asserted limitations is also weakened by his ability to adequately perform activities of daily living, as well as the absence of objective medical evidence corroborating his statements").

The Court approves the R. & R., denies Staten's request for review and affirms the Commissioner's decision. An appropriate Order follows.

BY THE COURT:

***/s/ Gerald J. Pappert***

Gerald J. Pappert, J.